IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARELL D'ANGELO COLLICK | : | |
| | : | Civil Action |
| | : | |
| Plaintiff | : | |
| | : | No. 15-5423 |
| v. | : | |
| | : | |
| NICOLE HEFFNER, *et al.* | : | |
| | : | |
| Defendants | : | |

MEMORANDUM

KEARNEY, J.                                                                January 15, 2016

Prisoners do not have a constitutional right to select their place of confinement so as to allow them to earn money on work release. Prison officials and medical staff have appropriate discretion in determining a prisoner needs medical care. As prisoners are entitled to medical care, they cannot claim medical staff caution and prudence deprives them of a constitutional right to earn money because the prisoner believes he is well enough to work. Plaintiff's claims fail and, based on his facts, amending his Complaint is futile as there are no constitutional rights at issue. As we explored any possible federal claim based on his facts, this is not a case where a more specific pleading will define a constitutional claim. We accordingly grant the Defendants' motions to dismiss with prejudice in the accompanying Order.

I.      **Plead facts and procedural history**[1]

Plaintiff Darell D'Angelo Collick ("Collick"), *pro se*, claims defendants Carol Sommers, Laura Kuykendall, Cindy Egizio, Janine Donate, Steve Miller, and Cliff Knappenberger (collectively, "the Lehigh County Defendants") and Nicole Heffner, Lauren Freeman, and Todd Haskins (collectively, "PrimeCare Medical Defendants") violated his civil rights.

On February 5, 2015, the Court of Common Pleas of Lehigh County, Pennsylvania revoked Collick's parole and remanded him to the Lehigh County Jail ("LCJ") to serve the balance of his sentence on a charge to which Collick pled guilty.[2]  The docket reflects a grant of "immediate work release for the purpose of treatment and to attend PAVE classes."[3]

On March 26, 2015, Collick transferred to the Community Corrections Center ("CCC") to begin work release.[4]  Approximately four (4) weeks later, at "a nurse checkup," Collick complained of heartburn which a nurse found to be chest pain.[5]  Collick asserts the nurse is "wrong."[6]  As a result of the chest pain finding, the prison transferred Collick to LCJ where he received medical checks "every other day" for three weeks before ultimately being cleared to return to CCC and, presumably, work release.[7]

Approximately a week and a half after returning to CCC, Collick ran out of unspecified medication for an unspecified condition, and after questions regarding insurance coverage, the prison transferred Collick back to LCJ.[8]  On May 28, 2015, Defendant Carol Sommers, Deputy Warden of Treatment at CCC reclassified Collick for "medical" reasons and determined he "remain at LCJ until cleared to return by PrimeCare."[9]  On June 2, 2015, Collick filled out a "Sick Call Request" asking to see a doctor to "find out the reason why I was sent back from work release for medical."[10]  A PrimeCare Medical staff member responded "for frequent use of nebulizer [illegible] c/o chest pain."[11]  Collick thereafter remained at the LCJ.

From July 2015 through September 18, 2015, Collick asked both PrimeCare Medical, Inc. and the Lehigh County Department of Corrections to see a doctor for medical clearance to return to work release.[12]  Collick formally grieved with the LCJ on August 11, 2015.[13]  On August 20, 2015, PrimeCare Medical Defendant Nicole Heffner denied Collick's grievance: "Your situation has been reviewed. You were permitted to go to CCC with the understanding

that you would be responsible for your medical well-being. You did not seek care while there and became medically unstable. Thus, the Provider has directed you stay here at the Jail to assure you receive proper medical attention that you require for health."[14] On September 22, 2015, Defendant LCJ Warden Janine Donate denied Collick's request to transfer to CCC and work release: "At this point, its [sic] medical's decision that you would be better cared for here. I do not decide who goes to WR. Final response to this issue."[15]

Collick filed petitions for reinstatement of work release, including a petition for reconsideration, with the Lehigh County Court of Common Pleas on July 31, 2015, August 19, 2015, and September 29, 2015.[16]   The state court denied Collick's petitions by orders dated August 6, 2015, September 8, 2015, and October 5, 2015.[17]

On October 6, 2015, Collick filed this action under 42 U.S.C. §1983 against the Lehigh County and PrimeCare Medical Defendants. Collick seeks relief in the form of "immediate return to work release" and "compensatory damages."[18]  Collick is no longer incarcerated and his request for a return to work release is moot.[19]

The Lehigh County Defendants and PrimeCare Medical Defendants each move to dismiss Collick's complaint under Federal Rule of Civil Procedure 12(b)(6). Collick did not respond to either motion.

II.    Analysis[20]

Collick does not identify a constitutional right.  The Lehigh County Defendants construe Collick's complaint regarding removal from work release as a deprivation of a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. They argue there is no protected liberty interest in work release under the Fourteenth Amendment or state law.  The PrimeCare Medical Defendants construe Collick's complaint as relating to a deliberate

indifference to medical needs as protected by the Eighth Amendment. They argue Collick's claim is *not* based on a right to receive adequate medical care arising under the Eighth Amendment, but on a claim he received too much medical care.

With no constitutional right identified in his complaint, and without responses to the motions to dismiss, we are left to infer the nature of Collick's alleged constitutional deprivation. Our Court of Appeals directs "the first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"[21]

We identify Collick's §1983 claim as a constitutional challenge to the decision to reclassify him from the CCC to the LCJ for medical reasons until medically cleared thus depriving him work release. We find, as a matter of law, Collick has no constitutional right to confinement at the CCC for work release. To the extent Collick's claim is one arising under the Eighth Amendment right to receive adequate medical care, we also find Collick fails to state such a claim.

## 1.  There is no constitutional right to confinement at the CCC and work release.

The Due Process Clause of the Fourteenth Amendment "protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."[22] A liberty interest may arise from the Constitution or state laws or policies.[23] Here, Collick challenges the transfer, based on a medical decision, from the CCC where he was able to participate in work release. He challenges the medical decision itself, characterizing it as "fabricated"[24] and "unfounded and frivolous"[25] and demands medical clearance to return to CCC for work release. Collick challenges the denials of medical clearance and return to CCC as "vague"[26] and "without so much as an

4

explination[sic]."[27] We construe these allegations as a denial of due process for the medical decision resulting in his incarceration in the LCJ rather than the CCC.

Even accepting Collick's allegations are true, they do not plausibly give rise to relief. A prisoner does not have a liberty interest in remaining in a preferred facility within the prison system.[28] The record reflects on February 5, 2015 the Lehigh County Court of Common Pleas revoked Collick's parole and remanded him to the LCJ to serve the balance of his sentence.[29]

> An inmate does not have the right to "be placed in any particular prison," including halfway homes and community release programs. *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); *Asquith v. Dep't of Corr.*, 186 F.3d 407, 411–12 (3d Cir.1999). A state has broad authority to confine an inmate in any of its institutions. *Meachum*, 427 U.S. at 224, 96 S.Ct. at 2538. Thus, courts recognize that a state's authority to place inmates anywhere within the prison system is among "a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Id.* at 225, 96 S.Ct. at 2538. Consequently, custodial personnel do not infringe an inmate's liberty interests by placing [him] in one custodial facility rather than another. *Id.* [30]

In *Asquith*, our Court of Appeals found living in a halfway house "amount[s] to institutional confinement" and "removal from the halfway house [does] not trigger the protections of the Due Process Clause."[31] Collick does not allege a liberty interest protected by the Constitution.

To the extent Collick's claim challenges not only his transfer from CCC to the LCJ, but also the resulting inability for work release, we find no constitutional deprivation. An inmate does not have a protected liberty or property interest in work release.[32] Nor does an inmate's expectation of keeping a particular prison job amount to a property or liberty interest protected by the Due Process Clause.[33]

Similarly, there is no state created liberty interest implicated here. The Supreme Court in *Sandin v. Conner* recognized states "may under certain circumstances create liberty interests

which are protected by the Due Process Clause."[34] Those interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[35] We determine "atypical and significant hardship" by "a measure of the degree of restraint between the expectation resulting from the conviction and the subsequent confinement."[36] Although Collick's complaint appears to suggest he would have been able to work if he had been medically cleared to return to the CCC, his parole had earlier been revoked and the state court remanded him to the LCJ in its February 2, 2015 Order.  His confinement in the LCJ, rather than the CCC as he desired, is not an "atypical and significant hardship" under *Asquith*.

Collick has no cognizable liberty interest and his §1983 claim is dismissed against the PrimeCare Medical Defendants and Lehigh County Defendants.

## 2.  Collick does not state a claim under the Eighth Amendment.

The PrimeCare Medical Defendants argue Collick fails to state a claim under the Eighth Amendment alleging improper medical care.  To the extent Collick asserts a violation of his Eighth Amendment rights, his claim is dismissed.

A convicted prisoner's right to receive adequate medical care derives from the Eighth Amendment and proscribes deliberate indifference to a prisoner's serious medical needs.[37]  To establish a violation of a constitutional right to adequate medical care, Collick must plead "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."[38]

Here, rather than alleging facts leading us to draw an inference of deliberate indifference to his medical needs, Collick complains of medical care he believes he does not need or with

which he disagrees. Only "unnecessary and wanton infliction of pain" or "deliberate indifference to the serious medical needs" of prisoners rises to the level of a constitutional violation.[39] Allegations of malpractice do not constitute Eighth Amendment violations and "mere disagreement over the proper course of treatment is likewise insufficient."[40] Having failed to allege deliberate indifference to a serious medical need, any Eighth Amendment claim asserted by Collick is dismissed.

### 3. Qualified immunity.

The Lehigh County Defendants alternatively argue they are entitled to qualified immunity. Having found Collick fails to allege a valid claim of a constitutional violation, we do not reach this issue.

### 4. Personal involvement of individual defendants

The Lehigh County Defendants alternatively argue Collick's §1983 claim must be dismissed because he fails to allege Carol Sommers, Laura Kuykendall, Cindy Egizio, Steve Miller, and Cliff Knappenberger were personally involved in the decision not to return him to work release. The Lehigh County Defendants argue Warden Donate response to Collick's grievance is insufficient to establish personal involvement required for §1983 liability to attach. Similarly, the PrimeCare Medical Defendants argue there are no allegations relating to Defendants Lauren Freeman or Todd Haskins demonstrating any personal involvement by them.

A plaintiff must demonstrate a defendant's "personal involvement in the alleged wrongs."[41] "A plaintiff 'must portray specific conduct by state officials which violates some constitutional right.' "[42] As set forth above, having found no violation of a constitutional right, we need not reach the issue of the sufficiency of Collick's pleading personal involvement against any of the Lehigh County or PrimeCare Medical Defendants.

### III.    Conclusion

Collick fails to assert a constitutional right. Without a violation of his constitutional rights, his §1983 claim fails.  Given his pled facts and our deference to his claim and inability to find a possible constitutional issue, we cannot discern any fact pattern which would allow him to progress on a claim in this Court.[43]  We grant Defendants' motions to dismiss with prejudice in the accompanying order.

---

[1]  We take the facts from Collick's Complaint (ECF Doc. No. 1-1) and the docket and orders from the Lehigh County Court of Common Pleas attached to the Lehigh County Defendants' motion to dismiss.

> "To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint. . . . Specifically, on a motion to dismiss, we may take judicial notice of another court's opinion – not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity."

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) (citations omitted); *see also Mumma v. High-Spec, Inc.*, 400 F.Appx. 629, 631 n.1 (3d Cir. 2010) (collecting cases).

[2]  *See* Lehigh County Court of Common Pleas criminal docket at 1-4 (ECF Doc. No. 15-2) ("Lehigh County Docket") and February 5, 2015 order of the state court (ECF Doc. No. 15-3). The Lehigh County Docket reflects the entry of a March 13, 2015 order from the state court denying Collick parole. *See* Lehigh County Docket at 5 (ECF Doc. No. 15-2). Collick filed subsequent motions for re-parole which were denied. *Id.* at 5-6.

[3]  Docket at 4 (ECF Doc. No. 15-2).

[4]  *See* Complaint at 5 (ECF Doc. No. 1-1). Collick does not appear to have actually worked at a job through work release, but was "due to start work the last week of April 2015." *Id.* at 6.

[5]  *Id.*

[6]  *Id.*

[7]  *Id.*

[8]  *Id.*

[9] *Id.* at 7.

[10] *Id.* at 8. Collick alleges on June 2, 2015 he went to a doctor's appointment at St. Luke's Hospital in Bethlehem.

[11] *Id.*

[12] *Id.* at 8-25.

[13] *Id.* at 15.

[14] *Id.* at 21.

[15] *Id.*

[16] *See* petitions at ECF Doc. Nos. 15-4, 15-5, and 15-6.

[17] *Id.*

[18] Complaint at 5.

[19] On October 19, 2015, Collick filed a letter request for appointment of counsel and notified the Clerk of the Court of a change in his address as of November 8, 2015 at the expiration of his sentence served at the LCJ. *See* ECF Doc. No. 6.

[20] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[ e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, __ F.3d __, 2016 WL 106159, *4 (3d Cir. Jan. 11, 2016) (quoting *Iqbal*, 556 U.S. at 675, 679). *See also Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d. Cir. 2010); *Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d. Cir. 2011) ("This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to

strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.")

[21] *Chavarriaga v. New Jersey Dept. of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (quoting *Nicini v. Morra*, 212 F.3d 798. 806 (3d Cir. 2000)).

[22] *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

[23] *Id.*

[24] *See* Complaint at 6 (ECF Doc. No. 1-1).

[25] *Id.* at 15, Inmate Formal Grievance.

[26] *Id.* at 5.

[27] *Id.* at 15.

[28] *Asquith v. Dept. of Corr.*, 186 F.3d 407, 410 (3d Cir. 1999).

[29] The Supreme Court recognizes a liberty interest in parole status protected by the Fourteenth Amendment. *See Morrissey v. Brewer*, 408 U.S. 47, 482 (1972). Significantly, Collick was *not* on parole at the relevant time; parole was revoked.

[30] *Chavarriaga*, 806 F.3d at 225.

[31] *Asquith*, 186 F.3d at 411; *see also Outen v. Prialeau*, No. 12-4166, 2013 WL 1875042, * 5-*6 (E.D. Pa. May 3, 2013); *Carter v. Morrison*, No. 06-3000, 2007 WL 4233500, *14 (E.D. Pa. Nov. 28, 2007); *Ogrod v. U.S.*, No. 06-5496, 2007 WL 2319766, at *3 (E.D. Pa. Aug. 10, 2007), applying *Asquith* analysis in motions to dismiss.

[32] *McGoue v. Janecka*, 211 F.Supp.2d 627, 630 (E.D. Pa. 2002).

[33] *Bryan v. Werner*, 516 F.2d 233, 240 (3d Cir. 1975); *Woodson v. Prime Care Medical, Inc.,* No. 12-4919, 2013 WL 247372, * 4 (E.D. Pa. Jan. 23, 2013).

[34] *Sandin v. Conner*, 515 U.S. 473, 483-84 (1995).

[35] *Id.* at 484.

[36] *Ogrod*, 2007 WL 2319766 at * 3 (quoting *Asquith*, 186 F.3d at 412).

[37] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

[38] *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir.1999)).

[39] *Wall v. Bushman*, __ F.App'x __, 2015 WL 9301346 (3d Cir. Dec. 22, 2015).

[40] *Id.; Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (quoting *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir.1987)).

[41] *Chavarriaga*, 806 F.3d at 222 (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

[42] *Id.* (quoting *Gittlemacker v. Prasse*, 428 F.2d 1, 3 (3d Cir. 1970)) (footnote omitted).

[43] *See Walton v. Mental Health Ass'n of Southeastern Pa.,* 168 F.3d 661, 665 (3d Cir. 1999)(amendment futile as a matter of law); *Compare Williams v. Sminkey et al.*, No. 13-2057, 2016 WL 161498 (E.D.Pa. Jan. 13, 2016)(amendment allowed for *pro se* plaintiff when more specific pleading may allow a constitutional claim).